**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SENETTA STANLEY<br>2722 Devereaux Ave.<br>Philadelphia, PA 19149 | : CIVIL ACTION<br>:<br>:<br>: |
|        Plaintiff,<br>     v. | : CASE NO.:<br>: |
| JKJ NUTH LLC d/b/a<br>NIFTY FIFTY'S ABINGTON<br>35 Wildwood Ave.<br>Lansdowne, PA 19050<br>    and<br>CHANTHOL NUTH<br>c/o JKJ Nuth, LLC<br>35 Wildwood Ave.<br>Lansdowne, PA 19050 | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
|        Defendants. | :<br>: |

## CIVIL ACTION COMPLAINT

Senetta Stanley (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against JKJ Nuth LLC d/b/a Nifty Fifty's Abington and Chanthol Nuth (hereinafter collectively referred to as "Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000, *et. seq*.), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff asserts, *inter alia*, that she experienced

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under Title VII. Plaintiff's PHRA claims however will mirror identically her federal claims under Title VII with the exception of adding Chanthol Nuth as an individual Defendant under the PHRA.

unlawful workplace discrimination and retaliation, culminating in her termination from Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under Title VII and Section 1981. There lies supplemental and/or ancillary jurisdiction over Plaintiff's future state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit under Title VII within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      JKJ Nuth, LLC d/b/a Nifty Fifty's Abington (hereinafter "Defendant Entity") is a Pennsylvania corporation that primarily operates in the restaurant business, with a location at the above-captioned address.

9.      Chanthol Nuth (hereinafter "Defendant Nuth") was and still is the owner and a high-level manager of Defendant Entity who was responsible for making decisions regarding employees' (including Plaintiff's) employment, such as hiring, firing, scheduling, and issuing discipline.

10.     At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

11.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.     Plaintiff is a Black (African American) female.

13.     Plaintiff is Muslim and practices the religious beliefs of Islam.

14.     Plaintiff was hired by Defendants on or about November 21, 2023.

15.     At all times during Plaintiff's employment with Defendants, Plaintiff held the position of Manager.

16.     Plaintiff worked under the supervision of various managers during her employment with Defendants; however, her primary supervisors were Defendant Entity's General Manager/Part-Owner, Steven Washington (Black/Unknown, male – hereinafter "Washington"), Defendant Entity's Assistant, Jennifer Ferraro (Caucasian, female – hereinafter "Ferraro"), and Defendant Nuth (Asian male).

**-Sexual Harassment - Gender Discrimination-**

17.     Shortly after staring her employment with Defendants, Plaintiff began being subjected to sexual harassment by Washington.

18.     For example, but not intending to be an exhaustive list, Plaintiff experienced unwanted sexual advances, including:

    a. Washington repeatedly violated Plaintiff's personal space by hugging and touching her despite clear communication from Plaintiff to Washington that his behavior made her uncomfortable.

    b. Washington made overly inappropriate suggestions, including offering to buy Plaintiff a car if she agreed to become romantically involved with him; the coercive proposal was clearly meant to imply that Plaintiff should be in a relationship with Washington in exchange for favors.

    c. Washington frequently made unsolicited comments about Plaintiff's appearance to objectify her, such as: "Your boyfriend is lucky to have you because you are such a beautiful young lady."

19.     The aforementioned sexual harassment of Plaintiff by Washington continued, creating a hostile and uncomfortable work environment where Plaintiff felt devalued and unsafe.

4

20.     Plaintiff avers that she repeatedly rejected Washington's advances and made it clear that she was uninterested in Washington's behavior.

21.     As a result of Plaintiff's constant rejections of Washington's sexual advances and her refusal to engage in a romantic or sexual relationship with him, Washington's behavior towards Plaintiff dramatically shifted and he became increasing hostile towards Plaintiff.

22.     Plaintiff really began to notice Washington's behavior towards Plaintiff shift from sexual harassment to retaliatory harassment in or about January 2024, after Plaintiff's significant other picked her up from work, confirming that Plaintiff was in fact in a relationship and that she was not interested in engaging in a sexual or romantic relationship with Washington.

23.     For example, Washington would make demeaning comments to Plaintiff, questioning her worth and implying that she wasn't submissive enough and needed to be submissive to succeed in this industry (both of which are discriminatory comments based on Plaintiff's gender).

24.     As Washington's retaliatory and discriminatory behavior increasingly became aggressive, Plaintiff reported the aforesaid sexual and retaliatory harassment to Defendant Entity's management, including Defendant Nuth.

25.     After Plaintiff's complaint to Defendant Nuth, her concerns of sexual harassment/discrimination and retaliation were never addressed, investigated, or remedied.

26.     Instead, in response to Plaintiff's complaint about Washington's inappropriate behavior, Defendant Nuth replied to Plaintiff by telling her to act like Washington was her dad; to ignore him; and/or to simply deal with it.

27.     As a result of Defendant Nuth's failure to properly remedy Plaintiff's concerns, Plaintiff was forced to continue working in a hostile work environment with Washington.

28.     Upon information and belief, Washington also sexually harassed another female employee of Defendants, who was a co-worker of Plaintiff.

29.     For example, upon information and belief, Washington would call this female employee names like "princess" and frequently comment on how pretty she was, despite her repeatedly telling him that she did not want to be addressed that way.

30.     Thus, in addition to making her own complaints of sexual harassment/discrimination and retaliation against Washington, Plaintiff, as a manager, also objected to and made a complaint to Defendant Nuth about Washington's actions towards this other female co-worker (discussed *supra*).

31.     The aforementioned female co-worker's employment with Defendants ended shortly after Plaintiff's report of sexual harassment, seemingly because it was not investigated and Defendants' solution to the issue was instead to lock Washington and the aforementioned female co-worker in a room together to "work it out" – as Defendants similarly suggested as a solution for Plaintiff's complaints of Washington.

32.     After Plaintiff's complaints to management about Washington's sexual harassment, Plaintiff faced additional retaliation by Defendants' management in the form of:

    a.   being unfairly sent home on her scheduled shifts, without explanation;

    b.   being denied opportunities to work overtime unlike her colleagues, which was a drastic change to her former ability to work overtime prior to her complaints; and

    c.   making her feel isolated by the hostility she received for engaging in protected activity under Title VII.

33.     Plaintiff continued to engage in protected activity under Title VII up and through the weeks preceding her termination both verbally and in writing to Defendant Nuth.

34.    For example, on or about July 31, 2024, Plaintiff sent a text to Defendant Nuth stating in part: "I feel like I'm being harassed and singled out by Steven. He always talking to me very disrespectful and he doesn't talk to any other manger in that way and Steve has said offensive things about my religion and me being a Woman multiple times . . . He is very sexist . . . ."

35.    Plaintiff also articulated the same sentiment (expressed in her July 31, 2024, written complaint) to Defendant Nuth verbally on or about August 2, 2024.

36.    Defendant Nuth never properly investigated Plaintiff's complaint of sexual harassment or gender discrimination and the aforesaid retaliatory hostility work environment continued up and through her unlawful termination on September 5, 2024.

### -Religious Discrimination-

37.    In addition to the aforementioned sexual harassment/discrimination and retaliation that Plaintiff faced while employed with Defendants, Plaintiff was also subjected to disparate and discriminatory treatment because of her religion.

38.    As part of her religious beliefs, Plaintiff wears a hijab and abstains from eating pork as a part of her faith.

39.    On one occasion, Plaintiff inquired whether Defendants' restaurant could offer non-pork options for those who wished to abstain from eating pork.

40.    After Plaintiff's inquiry, she was met with dismissive and offensive remarks, including comments such as: "I don't care about them people, if they can't eat it, that's on them."

41.    Plaintiff was additionally told: "I bet all people that are Muslim eat pork on their own time," and made reference to "those 5% acting all special."

7

42.     Upon information and belief, Kalima (Last Name Unknown – hereinafter "Kalima"), who was also Muslim and wore a hijab, faced similar derogatory treatment from Defendant.

43.     Plaintiff avers she overheard comments directed at Kalima, such as "she shouldn't be working here," and that management "didn't care what that thing (referring to her hijab) was, they didn't want to see her wearing that thing."

44.     These aforementioned comments were made in Plaintiff's presence, even though she, too, wears a hijab as part of her religious practice.

45.     Plaintiff lodged a complaint with Defendant Nuth on at least three separate occasions, with the last complaint being in close proximity to her termination, to explain the severity of the religious discrimination and hostile work environment created by Washington.

46.     Defendant Nuth replied to Plaintiff's complaints by saying he would "talk to Washington," but he additionally informed Plaintiff that she needs to continue working with Washington; that Plaintiff needs to "see the good side" in Washington; and that Plaintiff needs to be strong because that is just how Washington talks.

47.     Defendant Nuth never properly investigated Plaintiff's complaints of religious discrimination or took any remedial action. Instead, Plaintiff continued to be subjected to discriminatory treatment based on her religion through her termination.

### -Race Discrimination-

48.     Plaintiff was additionally subjected to discrimination based on her race while employed with Defendants.

8

49.    At the beginning of Plaintiff's employment with Defendants, the majority of Defendants' employees were Black; however, by the time of Plaintiff's termination, only approximately one-third of the employees were Black.

50.    Plaintiff overheard Washington state that Defendants needed to "get these Black people out of here and hire Hispanics because they work harder."

51.    The aforementioned example of racial discrimination, which is in no way exhaustive, created a hostile and unequal working environment, where Plaintiff's identity as a person of color was met with prejudice and disregard.

### -Retaliation-

52.    In or about July and August 2024, Defendants' mistreatment of Plaintiff continued and escalated.

53.    As stated previously, Plaintiff texted Defendant Nuth to lodge another complaint at the end of July 2024; however, Defendant Nuth ignored Plaintiff's concerns.

54.    At this time, Plaintiff had complained to Defendant Nuth multiple times about the treatment she was personally subjected to, in addition to complaints regarding Washington's treatment of others employed with Defendants.

55.    Upon information and belief, Defendants did not once investigate Plaintiff's complaints and instead told Plaintiff to deal with the issues—placing the blame and responsibility to change Washington's behavior or simply ignore the same.

56.    Shortly after lodging multiple complaints against Washington, which were completely ignored by Defendant Nuth, Plaintiff learned that Defendant Nuth shared her aforesaid concerns with Ferraro and Washington.

57.    Ferraro responded by pulling Plaintiff aside and informing her that the industry and people at their job were sexist and that Plaintiff was young enough to find a different job, suggesting that Plaintiff should quit instead of Defendants rectifying her concerns of discrimination and sexual harassment.

58.    On the same day as Ferraro's aforesaid warning, Washington pulled Plaintiff into the office, locked the door, and informed Plaintiff that he would not be changing his behavior and that Plaintiff should deal with it or find another job.

59.    Plaintiff felt as though Defendants' management preferred Plaintiff to seek employment elsewhere rather than address or investigate any of her complaints regarding discrimination and sexual harassment.

60.    In or about the end of August 2024, Plaintiff was abruptly removed from the manager group messaging forum and requested by Defendant Nuth to meet in his office where he informed Plaintiff that the restaurant she was working at was closing.

61.    Plaintiff had not heard about this news of her location closing prior to or after the meeting she had with Defendant Nuth.

62.    Defendant Nuth claimed the warning and information provided to Plaintiff (about the restaurant closing) was given to her so that Plaintiff had an opportunity to find another job and that this information, would be shared with everyone at the business as well.

63.    Upon information and belief, Defendant Nuth did not inform any other workers at Plaintiff's work location of the news that the restaurant would soon be closing.

64.    The reason that Defendant Nuth did not inform any other employees that the restaurant was closing is because Defendant Nuth had lied to Plaintiff; the restaurant that

Plaintiff was working at was not closing and Defendant Nuth had only told Plaintiff this information to try to entice Plaintiff to quit.

65.    The following week, on or about September 4, 2024, Plaintiff was called in the office by management including Ferraro, Defendant Nuth, and Washington, and she was told she was being let go due to "lack of performance."

66.    Defendant Nuth offered Plaintiff two weeks to find another job or, alternatively, to step down to a sever position—an option that would have resulted in significantly lower pay and fewer hours.

67.    Plaintiff was thereafter informed, the next day, on or about September 5, 2024, that Defendants were immediately terminating Plaintiff's employment.

68.    Upon Plaintiff's termination by Defendants, she was offered severance.

69.    The aforesaid severance agreement required that Plaintiff release any and all claims that she had or may have against Defendants in exchange for a small sum of money.

70.    Because Plaintiff has legitimate claims of discrimination and retaliation under state and federal law, Plaintiff did not accept the aforementioned offer of severance.[2]

---

[2] *See* e.g. *Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. May 22, 2013)(an employer who offered severance when policies did not require upon condition of waiving FMLA claim supported finding of pretext in FMLA claim among other facts); *See also Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)("Severance pay packages contingent upon a release of c claims which are offered contemporaneously with the notice of termination are not covered by [Rule 408]", and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy)."

71.     Based on the foregoing, Plaintiff believes that she was subjected to a hostile work environment and ultimately terminated by Defendants for discriminatory and/or retaliatory reasons under Title VII (and state law).

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Gender Discrimination; [2] Sexual Harassment; [3] Retaliation)**
**-Against Defendant Entity Only-**

72.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73.     Plaintiff was subjected to a hostile work environment through gender discrimination, sexual harassment and retaliation in violation of Title VII.

74.     Plaintiff complained to Defendant Entity's management about the aforesaid sexual harassment and gender discrimination to no avail, and instead of properly investigating or remedying her concerns, Defendant Entity's management subjected her to a retaliatory hostile work environment and terminated her employment.

75.     Plaintiff believes and avers that her gender was a motivating or determinative factor in Defendant Entity's decisions to:

a.  unfairly send Plaintiff home on her scheduled shifts, without explanation;

b.  deny Plaintiff the opportunity to work overtime unlike her colleagues (not within her protected class); and

c.  wrongfully terminate Plaintiff's employment.

76.     Plaintiff also believes and therefore avers that because of her complaints of sexual harassment and/or gender discrimination, Defendant Entity made the following decisions:

a.  unfairly sending Plaintiff home on her scheduled shifts, without explanation;

12

b. denying Plaintiff the opportunity to work overtime unlike her colleagues (who had not complained of discriminatory or sexual harassment); and

c. wrongfully terminating Plaintiff's employment.

77. Plaintiff asserts that Defendant Entity's decisions (discussed *supra*) were made in violation of Title VII.

**COUNT II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Religious Discrimination; [2] Retaliation; [3] Hostile Work Environment)**
**-Against Defendant Entity Only-**

78. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

79. Plaintiff is Muslim and practices the religious beliefs of Islam.

80. Plaintiff was subjected to a hostile work environment because of her religion through disparate treatment, discriminatory comments, attempts to get her to quit (which included providing Plaintiff with false information about the restaurant closing).

81. While Plaintiff complained of Defendant Entity's violations under Title VII, her concerns were never properly investigated or remedied. Instead, she was subjected to retaliatory hostile work environment and ultimately terminated.

82. Plaintiff believes and avers that her religion was a motivating or determinative factor in Defendant Entity's decisions to:

a. unfairly send Plaintiff home on her scheduled shifts, without explanation;

b. deny Plaintiff the opportunity to work overtime unlike her colleagues (not within her protected class); and

c. wrongfully terminate Plaintiff's employment.

13

83.     Plaintiff also believes and therefore avers that because of her complaints of religious discrimination, Defendant Entity made the following decisions:

a.   unfairly sending Plaintiff home on her scheduled shifts, without explanation;

b.   denying Plaintiff the opportunity to work overtime unlike her colleagues (not within her protected class); and

c.   wrongfully terminating Plaintiff's employment.

84.     Plaintiff asserts that Defendant Entity's decisions (discussed *supra*) were made in violation of Title VII.

## COUNT III
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### (Race Discrimination)
### -Against Defendant Entity Only-

85.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

86.     Plaintiff is Black (African American).

87.     Plaintiff was subjected to hostile and disparate treatment because of her race.

88.     Plaintiff believes and avers that her race was a motivating and/or determinative factor of Defendant Entity's decisions to:

a.   unfairly send Plaintiff home on her scheduled shifts, without explanation;

b.   deny Plaintiff the opportunity to work overtime unlike her colleagues (not within her protected class);

c.   and wrongfully terminate Plaintiff.

89.     Plaintiff asserts that Defendant Entity's decisions (discussed *supra*) were made in violation of Title VII.

**COUNT VI**
**Violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981")**
**(Race Discrimination)**
**-Against Both Defendants-**

90.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

91.    Plaintiff is Black (African American).

92.    Plaintiff was subjected to hostile and disparate treatment because of her race.

93.    Plaintiff believes and avers that Defendants made the following decisions because of Plaintiff's race:

    a.  unfairly sending Plaintiff home on her scheduled shifts, without explanation;

    b.  denying Plaintiff the opportunity to work overtime unlike her colleagues (not within her protected class);

    c.  and wrongfully terminating Plaintiff.

94.    Plaintiff asserts that Defendants' decisions (discussed *supra*) were made in violation of Section.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and

15

seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

     C.     Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

     D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

     E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

     F.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

     G.     Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: September 18, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Senetta Stanley | : | CIVIL ACTION |
| v. | : | |
| JKJ Nuth LLC d/b/a Nifty Fifty's Abington, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (x )

| 9/18/2025 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

Place of Accident, Incident, or Transaction: **Defendants place of business** _____

---

**RELATED CASE IF ANY:** Case Number:_____ Judge:_____

1.  Does this case involve property included in an earlier numbered suit?    Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

A.  *Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☐ 8.  Employment
☐ 9.  Labor-Management Relations
☒ 10.  Civil Rights
☐ 11.  Habeas Corpus
☐ 12.  Securities Cases
☐ 13.  Social Security Review Cases
☐ 14.  Qui Tam Cases
☐ 15.  Cases Seeking Systemic Relief **\*see certification below\***
☐ 16.  All Other Federal Question Cases. *(Please specify)*:_____

B.  *Diversity Jurisdiction Cases:*

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)*:_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases: *(Please specify)*_____
        _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

### ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

STANLEY, SENETTA

**DEFENDANTS**

JKJ NUTH LLC D/B/A NIFTY FIFTY'S ABINGTON, ET AL.

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**     **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander     Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability   ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine     Injury Product | | ☐ 880 Defend Trade Secrets | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product     Liability | | Act of 2016 | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability   **PERSONAL PROPERTY** | **LABOR** | | (15 USC 1681 or 1692) |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | Act | **SOCIAL SECURITY** | Protection Act |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | ☐ 362 Personal Injury -     Product Liability | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment   ☐ 510 Motions to Vacate | | or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | mployment   **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other   ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   9/18/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____